Geo. D. McNeill and G. H. McNeill v. Bay Springs Bank.

[56 South. 333.]

1. Bills and Notes. *Fraud. Evidence. Consideration.*

Where the cashier of a bank induces a party to execute his note to the bank by misrepresentations and concealments, the maker establishes the defense of fraud as against the bank without showing that the misrepresentation and concealment were intentionally made or known to be false.

2. Bills and Notes. *Failure of consideration.*

Where a maker executed his note on an agreement that it should be used to raise money to complete a grading contract of a firm of which he was not a member but no money was raised on the note, which was credited on an overdraft of the firm, in such case there was a failure of consideration of the note.

Appeal from the circuit court of Newton county.

Hon. G. C. Tann, Special Judge.

Suit by Bay Springs Bank against Geo. D. McNeill et al. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court, except instruction No. 2 which was refused by the court and is as follows:

The court charges the jury for the defendant G. H. McNeill that if they believe from the evidence that the defendant G. H. McNeill signed the note sued on upon an agreement that it was to be used to raise money to complete a grading contract of McPherson and McNeill, that no money was ever raised on said note, that on the 22nd day of June, 1905, said note was credited on the overdraft of McPherson and McNeill at the plaintiff bank, that the said firm of McPherson and McNeill not only failed to raise any money on said note but that a short while after the execution of said note the said McPherson sold and disposed of half of the outfit of said

firm with which said grading was to be done. that a month later the other member of said firm Geo. D. McNeill abandoned said work, and that after three months the said McPherson sold the balance of said outfit and threw up said contract, then there was a failure of consideration and the defendant, G. H. McNeill is not liable.

*Witherspoon & Witherspoon,* for appellant.

"In Alabama it is settled that a contract may be rescinded at law because of false representations, though the party making them may not have known they were false." *Atwood* v. *Aright,* 29 Ala. 346; *Blackman* v. *Johnson,* 35 Ala. 252; *Sledge* v. *Scott,* 56 Ala. 202; *Davis* v. *Betr,* 66 Ala. 206; *Ball* v. *Farley,* 81 Ala. 292.

"It is thoroughly well settled by the common law that misrepresentation of a material fact, made by one of the parties to a contract, though by mistake and innocently, if acted on by the other party, constitutes legal fraud." *Woodruff* v. *Saul,* 70 Ga. 271.

"In Michigan it is settled that a contract may be rescinded at law for false representations as to material facts, innocently made." *Mooney* v. *Davis,* 75 Mich. 188, 13 Am. St. Rep. 425; *Angell* v. *Loomis,* 97 Mich. 5.

In Nebraska a contract may be rescinded at law for innocent misrepresentations if the other party relied upon them and had a right to rely on them. *Leavitt* v. *Sizes,* 35 Neb. 80; *Johnson* v. *Gulich,* 46 Neb. 817, 50 Am. St. Rep. 629.

Whoever positively and generally makes a false assertion as an inducement for another to contract with him and succeeds on that ground, is guilty of a fraud which vitiates the contract. It must be as represented or it is fraudulent. A man who does so assert ought to suffer, he must answer for the truth." *Snyder* v. *Findley,* 1 N. J. L. 92, 1 Am. Dec. 193.

In the case of *King* v. *Hopkins,* 13 Ohio Cir. Ct. Rep. 305, 7 Ohio Cir. 362, it was held that a sale of goods may

be rescinded because of false representations as to material facts, though made without knowledge of their falsity, and not recklessly but in *bona fide* belief that they are true.

If innocent misrepresentations do not avoid the contract in the case where it is the duty of the person to speak, then it is impossible that concealment should, because a mere failure to speak could not be as bad and harmful as a misrepresentation, however innocently made.

But the seventh charge, like the sixth, is fatally defective, because it ignores the fraudulent concealment set up in the plea. It tells the jury that the note was not procured by fraud, unless McPherson was cashier and made statements as to the solvency which he knew to be false. The charge might as well have told the jury in express language that a fraudulent concealment would not be procuring a note by fraud.

The court erred in refusing the second charge for the defendant. This charge was unobjectionable and should have been given.

The charge enumerates these facts all of which were established by undisputed testimony.

First. That the agreement by which the note was signed was that it was to be used to raise money to complete the grading contract.

Second. That the note was not used to raise money as agreed but to pay an overdraft at the bank.

Third. That soon after the execution of the note McPherson sold half of the outfit, and a month later the other member of the firm abandoned the contract, and three months later McPherson sold the other half of the outfit and abandoned the contract.

The charge tells the jury that if they find these facts then there was a failure of consideration. Certainly this is good law. If the agreement with which the note was signed was that it should be used to raise money to

complete the contract, and if it was not used for that but a different purpose, and if the very contract which it was to raise money to complete was abandoned and the grading outfit sold, then there was a failure of consideration, if it is possible for a consideration to fail.

*Amis & Dunn,* for appellee.

Defendants by tenth assignment complain of the action of the court in granting the sixth instruction for the plaintiff, on the ground that the charge tells the jury that the misrepresentation must have been intentional.

The instruction is correct. The note sued on was executed by the defendants for a certain, definite purpose, to-wit, the purpose of raising two thousand dollars to be offset by two thousand dollars to be raised by McPherson; all of which was to go into the business of McPherson & McNeill, and to be used for their benefit. The bank was not a party to the transaction at the time of the execution of the note. It was an arrangement entered into between G. H. McNeill and the two partners in the firm of McPherson & McNeill, and the note was delivered to McPherson to be negotiated for the purpose of raising the two thousand dollars. It is true that McPherson was also cashier of the plaintiff bank, and that notice or knowledge that he may have had, as an individual or member of the partnership, would, perhaps, be imparted to the bank, because of his official connection with it. But certainly, unless it were shown by the testimony that he was acting for the bank, in procuring and in discounting the note, then any fraudulent act of his, in an individual capacity, or as a partner in the firm, done for his own benefit or for the benefit of his firm, would not be imputed to the bank.

Indeed, it clearly appears from the testimony, first, that McPherson was not acting for the bank in the negotiation which resulted in the execution of the note sued on; that he did not misrepresent, intentionally or

otherwise, to G. H. McNeill, any material fact, nor did he ever conceal from G. H. McNeill the insolvency of the firm, because, as a matter of fact, the firm was not insolvent. Nor is it true, under the testimony, that a single fact represented by him to G. H. McNeill was at the time false and untrue; nor is it true, from the testimony, that G. H. McNeill was ignorant of the truth of the matters of fact represented to him by McPherson, because McPherson told him the truth about it. This being true, it cannot be said that the instruction complained of by this assignment was in the least harmful, even if it should be held not to state the law correctly, a thing we do not concede. 20 Cyc. 68.

Eleventh assignment. This assignment complains of the action of the court in granting the seventh instruction for the plaintiff, because the said instruction states that the statements touching the solvency of McPherson & McNeill to G. H. McNeill must have been untrue, within the knowledge of the said McPherson. This instruction is correct, because, if the statements were true, then there was no fraud; and if they were untrue, as a matter of fact, though McPherson believed them to be true, then the bank cannot be charged with any notice or knowledge of the fraud. Under the recent case of *Bank of Newton* v. *Simmons,* 49 South. 616, the plaintiff's right of recovery would not be affected by any fraud shown. If McPherson, who made the statements, believed them to be true at the time, then the bank had no notice of any fraud or deceit in the procurement of the note, and it must be remembered that in the transaction which resulted in the execution of the note, McPherson was acting, as shown by the record, for the benefit of the firm of McPherson & McNeill, and not for the benefit of the bank. 20 Cyc. 68.

WHITFIELD, C.

The appellee sued appellants on a promissory note for two thousand dollars, dated June 9, 1905, payable Jan-

uary 1, 1906, to the Bank of Bay Springs. The appellee introduced 'the note and rested. The appellants set up two defenses. First, that there was a total failure of consideration; and, second, that the note was procured by fraud. The evidence showed that McPherson and Geo. D. McNeill were engaged in grading, and that they had at that time a contract with Bowles & Hemmingway—a contract to do considerable grading work. At that time they owed the Bank of Bay Springs seven thousand, one hundred dollars, and had certain other debts, not important to mention. Being at that time indebted to the Bay Springs Bank in the sum of seven thousand, one hundred dollars, and needing more money with which to complete the contract with Bowles & Hemmingway, McPherson went to see Dr. G. H. McNeill in his office in the town of Newton, and stated to him, as testified to uncontradictedly, as follows: "That he (McPherson) would make a note for two thousand dollars to the Bank of Bay Springs, and that he wanted Dr. McNeill, the father of Geo. McNeill, to execute with Geo. McNeill another note for two thousand dollars payable to the Bank of Bay Springs; that McPherson & McNeill were abundantly solvent, and that Dr. McNeill would never be troubled about the note; that the four thousand dollars would be used for completing the grading contract with Bowles & Hemmingway; that that contract would be completed by the 1st of January, and that therefore he wanted the note payable on that date, January 1, 1906; and never once mentioned to Dr. McNeill the fact that McPherson & McNeill then owed the Bank of Bay Springs seven thousand, one hundred dollars, and owed other persons, nor that there was any contemplation of selling one-half the outfit of McPherson & McNeill, composed of mules, scrapers, etc., to anybody. Not long after this note was executed, on the 9th of June, 1905, McPherson & McNeill, in the prosecution of their grading contract for Bowles & Hemmingway, struck dis-

astrous quicksands, and in about three months from the date of said note abandoned the contract completely and sold out one-half their entire outfit to one Johnson; Mc-Pherson receiving the consideration. It is more than probable that this sale was in pursuance of some previous negotiations with Johnson, though there is no positive evidence clearly showing this. The note falling due was not paid, and this suit was brought.

In the fourth special plea filed by the appellants it was not only stated that the signature of Dr. McNeill was secured by positive misrepresentations, but that it was also procured by a fraudulent concealment of the seven thousand, one hundred dollars owed to the bank, and that Dr. McNeill would never have signed the note, had he known of this indebtedness. It is proper to note that the replication to the fourth special plea seems to deal alone with the positive misrepresentations. There is no direct denial of any fraudulent concealment. This, however, by the way. On the defense of failure of consideration it is only necessary to say, without incumbering this opinion with a detailed statement of the facts, which the reporter will set out fully, that we are satisfied that the real agreement, on the faith of which Dr. McNeill signed the note, was that the note he signed, and the note that McPherson made, or, rather the proceeds of those two notes, were to be applied in payment of the work done in completing by January 1, 1906, the grading contract with Bowles & Hemmingway. This clearly is the real agreement between the parties—the consideration of the contract evidenced by the note. One other most important fact is that McPherson was the cashier of the Bay Springs Bank.

This being the statement of the case on the evidence and pleadings, the court gave for the plaintiff the following instructions:

"No. 6. The court charges the jury that, in order to establish the charge of fraud as made in defendant G. H.

McNeill's third special plea, it must appear to the jury by a clear preponderance of evidence, first, that some person acting for the plaintiff bank, in the negotiations which resulted in the execution of the note sued on, intentionally misrepresented to him, before signing and delivery of said note, some matter or matters of fact, materially affecting his liability as one of the joint makers of said note; second, that such statement or representation of facts so made to him was at that time false and untrue; third, that he, the said G. H. McNeill, was then ignorant of what the truth was as to such matters of fact; and, fourth, that he signed and delivered the note sued on, in reliance upon the truth of the statements of fact so made to him by said bank representative." Given.

"No. 7. The court charges the jury that unless they believe, from all the testimony in the case, that at the time of executing the note sued on McPherson was cashier of the plaintiff bank at the time the note sued on was executed, and that he did at that time make statements touching the solvency of McPherson & McNeill to G. H. McNeill, and that said statements were at that time untrue, within the knowledge of the said McPherson, then the jury will find that said note was not procured by fraud."   Given.

"No. 8. The court charges the jury that the plaintiff bank cannot be held responsible for the words or acts of any person or persons not acting for it in the transaction which resulted in the execution of the note sued on; and even though the jury may believe that the defendant G. H. McNeill was ignorant of the true condition of the affairs of the firm of McPherson & McNeill, and that he would not have signed said note had he known all the facts in reference thereto, and that the condition of said firm was concealed from him, or even that he was misinformed in reference thereto, still such facts are not a defense to said note, unless it further

appear from the evidence that the said bank, or some-
one acting for it, actively misrepresented the facts as to
the condition of the said firm to him before the signing
of said note.''   Given.

''No. 9.   The court charges the jury that, even though
they may believe G. H. McNeill was at the time of the
execution of the note sued on ignorant of the fact that
McPherson & McNeill were indebted to the plaintiff'
bank, and that he would not have signed the note had
he known that fact, still these facts are no defense to the
note sued on, unless the jury further believe from the
evidence that McPherson was at the time of the execution
of the note the cashier of plaintiff bank, and that he
fraudulently and intentionally concealed the fact of the
indebtedness of said firm to said bank for the purpose
of inducing G. H. McNeill to sign said note.''   Given.

It will thus be seen that the case for the plaintiff was
put to the jury by the court in these instructions so as to
distinctly inform the jury four times in succession that
the defense that the note was procured by fraud could
not be made out unless the misrepresentations and con-
cealments of McPherson were intentionally false—known
to him to be false when made.   This is not the law.   If
Dr. McNeill acted on these misrepresentations and on
these concealments, and executed the note on the faith
of them, the damage to him is just the same, whether
McPherson made misrepresentations and concealments
of the facts intentionally or not.   Learned counsel for
appellee feel the force of this, and attempt to avoid it by
saying that this flagrant error running through the plain-
tiff's charges was cured by instructions Nos. 3 and 5 for
the defendant, which are as follows:

''No. 3.   The court charges the jury that if, from the
evidence, the jury believe that the defendant G. H. Mc-
Neill was induced to sign the note sued on by false repre-
sentations or fraudulent concealments of material facts,

then the defendant G. H. McNeill is not liable on said note." Given.

"No. 5. The court charges the jury that if, from the evidence, the jury believe that the said O. S. McPherson was cashier of the plaintiff bank at the time the note sued on was signed, and made representations to the defendant G. H. McNeill to induce him to sign the note sued on, and that by said representations made the defendant G. H. McNeill believed that the firm of McPherson & McNeill was solvent, and that O. S. McPherson represented to said G. H. McNeill large amounts of valuable property as owned by said McPherson & McNeill, and that said representations were made to induce him to sign said note, and that said firm was then insolvent, it was the duty of said McPherson also to state the amount of the debts due by said firm, and that if he fraudulently concealed from said McNeill the amount and existence of said debts, and thereby induced him to sign said note, then the defendant G. H. McNeill is not liable on said note." Given.

But it is manifest, upon a mere inspection of the opposing charges, that the charges for the defendant are not such as cure the error, but are such as are in irreconcilable conflict with the four charges named for the plaintiff. In other words, the four charges for the plaintiff told the jury the defense was not good unless McPherson intentionally misrepresented and concealed the facts. The two charges for the defendant told them that the defense was good if representations were made and concealments indulged in with respect to material facts, which representations and concealments were false in fact, whether McPherson knew them to be false or not. One who fraudulently misrepresents materials facts, or fraudulently conceals material facts, and thus procures a note to be signed, cannot hold the party executing such a note on the ground that, though the representations were false, and the facts concealed not as he stated, or

rather that, though the representations were false and material facts were concealed, he did not intentionally make the misrepresentations and concealments, or did not know the representations, etc., were false. It was, therefore, fatal error to give the instructions pointed out for the plaintiff. The jury were left without any guide whatever as to the vital principle affecting the defense, that the note was procured by fraud.

We think, also, that instruction No. 2, asked by the defendant, should have been given. If the jury believed the facts set out in that instruction, there was manifestly a failure of consideration.       *Reversed and remanded.*

Per Curiam. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is reversed, and the cause remanded for a new trial.